JOHN T. CLARK, JR., Plaintiff, *v.* EDWARD J. FLYNN, Sheriff of Bronx County, Defendant.

Supreme Court, New York County, March, 1923.

Sales — automobiles — innocent purchasers for value without notice — wrongful seizure and conversion by sheriff — when unrecorded " negotiable trust receipt " not valid against innocent purchaser — estoppel — title to personal property — Personal Property Law, § 43.

Plaintiff purchased and paid for an automobile from an automobile sales company. The company occupied a large building with a display room in which was exhibited a model of the car purchased, of which it had the exclusive agency. After using the car about three weeks plaintiff sent it back for certain adjustments and repairs under a guaranty in the contract of purchase. The company became financially involved and the car was seized by the sheriff.

Demand for the return of the car was made by the plaintiff both upon the sales company and the sheriff but delivery was refused. Plaintiff brought an action against the sheriff for wrongful seizure and conversion. The defense was that the car had been lawfully taken by the sheriff under a writ of replevin in an action brought by the holder of a certain " negotiable trust receipt " who obtained judgment by default against the sales company. It appeared from the evidence that the company making the automobiles shipped three cars, including the one in question, to the sales company under an " order bill of lading " to its own order and indorsed by it to the order of a trust company, which in turn indorsed the same to the order of any bank or trust company. When the bill of lading was received by a bank there was attached thereto a sight draft on " arrival of goods " indorsed to said bank, drawn by the manufacturer's distributing company upon the sales company for the wholesale price of the three cars. The draft was paid by the bank upon request of the sales company and the draft, stamped " paid," and the bill of lading were delivered to the trust company. The trust company delivered the bill of lading to the sales company indorsed by the distributing company, and the sales company in exchange delivered to the trust company a check for one-fifth of the purchase price of each of the three automobiles and a " negotiable trust receipt " for the automobiles and a " time draft " for the balance of the purchase price of each car. The " negotiable trust receipt " covering the automobile in suit provided that the automobile would be held in trust for the holder of the time draft and not sold without the consent of the holder of the sight draft. The automobile was sold to the plaintiff herein without consent the day after the delivery of said trust receipt and time draft. The time draft was not paid. *Held,* that the " negotiable trust receipt " was not valid as against plaintiff, an innocent purchaser for value without notice; that the trust company and its transferee are estopped from asserting any title as against the plaintiff herein; that the sales company having possession of the automobile and a right to sell the same the plaintiff herein obtained title thereto under section 43 of the Personal Property Law; that the rights of the public and innocent purchasers, in cases like the present, are paramount to secret liens and the supposed necessity and convenience of business, and plaintiff is entitled to judgment.

ACTION for wrongful seizure and conversion.

*Fitzgerald, Stapleton & Mahon* (*James S. Regan,* of counsel), for plaintiff.

*Bertrand L. Pettigrew* (*Platt K. Wiggins,* of counsel), for defendant.

DELEHANTY, J. In this action, in which a jury trial has been waived, brought against the sheriff of Bronx county for an alleged wrongful seizure and conversion of the plaintiff's " Cleveland Sedan " automobile under a writ of replevin, the material facts are as follows: The Elsey Motor Company, a third party, had a place of business on the Grand Concourse, in The Bronx borough, and was engaged in the business of retailing automobiles. That company had a " big building " in which it had a display room where new automobiles of several different makes were exhibited

for sale, including the " Cleveland," the " Chandler " and the " Marmon." These automobiles were also advertised for sale by " display advertisements " of " the respective trade marks on the windows." The company had been retailing " Cleveland " motor cars from 1919 and had the exclusive agency or right to sell said " Cleveland " cars in Bronx county. On June 24, 1922, the plaintiff called at the place of business of said Elsey Motor Company where these automobiles of various makes were on display for sale, and among them was a " Cleveland Sedan " car. The said car was shown to him by one Davis, the general manager and secretary of the company, and was examined by the plaintiff. Thereupon the plaintiff signed a written contract with said company for the purchase of a Cleveland sedan automobile for $1,750 and paid down $100 on account. Two days later, on June 26, 1922, pursuant to said agreement, there was delivered to him at his residence in Rye a Cleveland sedan car by said Davis, for which the plaintiff gave to him his check to the order of the company for the balance of the purchase price ($1,650) and also to cover the purchase price ($43.50) of a tire, a Michelin tube, an inside mirrorscope and a stop signal, aggregating $1,693.50 in all, which check was deposited by said company and duly paid. At the same time bills for the car and said equipment were delivered to the plaintiff duly receipted by the said company. After using the car about three weeks and running 500 miles the plaintiff about July 15, 1922, sent the car by said Davis back to the company to have some adjustments or repairs made in accordance with the guaranty under the contract of purchase. After waiting for some time for the return of his car the plaintiff went to Davis to ascertain the cause of the delay. The plaintiff was informed that the company was in financial difficulties, and he finally ascertained that his car had been seized by the sheriff of Bronx county. Both the company and the sheriff refused to give the plaintiff possession of the car, although duly demanded on August 11, 1922. The car had been repaired at the time of the seizure, and having been run about 500 miles was found to be worth about $1,500 besides the attachments, which were worth $43.50. The defense was that the car had been lawfully taken on August 9, 1922, by the sheriff under a writ of replevin in an action brought by one Frank W. Collins against the said Elsey Motor Company in which he thereafter, in October, 1922, obtained judgment by default; that said Collins was entitled to possession and had title to the car under the terms of a certain " negotiable trust receipt " which had been transferred and indorsed over to him by the Commercial Investment Trust Corporation, hereinafter for convenience

referred to as the "Trust Company." The evidence showed that the Elsey Motor Company in the early part of June, 1922, had ordered three Cleveland sedan automobiles from the Hulett Motor Company, the New York distributor of the Cleveland Automobile Company, and these three automobiles, including the one in question, were shipped to the Bronx by said Cleveland Company under an "order bill of lading" to its own order, "notify Elsey Motor Company" at the Bronx, and indorsed by it to the order of the Union Trust Company of Cleveland, which in turn indorsed the same to the order of any bank or trust company. When the bill of lading was received by the Bronx National Bank there was attached thereto a sight draft on "arrival of goods" indorsed over to said bank, drawn by said Hulett Motor Car Company upon the Elsey Motor Company for the wholesale price of all three automobiles, including the one in suit. On June 23, 1922, at the request of the Elsey Motor Company, the sight draft so held by the said Bronx National Bank was paid by check of the said trust company. In exchange for its check the sight draft, stamped "paid," and the bill of lading were delivered to the trust company. Thereupon, and on the same day, June 23, 1922, the trust company delivered the bill of lading to the Elsey Motor Company, indorsed "Deliver to Elsey Motor Company or order," and signed by said "Hulett Motor Car Company." Simultaneously, and in exchange for the bill of lading, the Elsey Motor Company signed and delivered to the trust company its check for an amount equal to one-fifth of the purchase price of each of the three automobiles, besides the expenses of the transaction; also a "negotiable trust receipt" for each of the three cars, and a "time draft" for the balance of the purchase price of each car, including the one in question. The negotiable trust receipt, covering the automobile in suit, was numbered and dated June 23, 1922, and, among other things, recited that there had been "received from Commercial Investment Trust, Incorporated, New York, the owner thereof, Cleveland Motor Vehicle * * * serial No. 30439 * * * complete with all standard catalogue attachments and equipments, in consideration whereof and of being permitted to display same in our place of business, we agree, at our expense, to warehouse and to hold said motor vehicle in trust for the holder of time draft of even number herewith (which we have this day accepted) as their property, and agree to return on demand in good order and unused, but with liberty to us to exhibit and after first obtaining their written consent (but not otherwise) to sell the same for their account for cash for not less than $1,106.06, and we further agree in the case of such sale to keep the proceeds separate from our funds

and immediately hand the proceeds to them without expense or cost to the holder of said time draft." The "time draft," drawn upon the Elsey Motor Company and referred to in the negotiable trust receipt, and accepted by said company at the same time, was dated June 23, 1922, and made payable to the order of said trust company on or before September 23, 1922, "if demand be made," for $1,106.06, "as security" for the acceptor's obligations under the said trust receipt covering said automobile, together with an attorney's fee of fifteen per cent in case the holder should elect to place the draft in the hands of an attorney for collection. Incidentally it may be noted that the trust company received an invoice of the automobile in question on the next day, dated June 24, 1922, but "for account" of said motor company. After thus receiving the bill of lading on June twenty-third for said automobile, in exchange for the "trust receipt" and "time draft" and a check equivalent to twenty per cent of the purchase price of the car, the Elsey Motor Company, as already indicated, sold the car the next day, June twenty-fourth, to the plaintiff, who had no notice whatever of any claim upon the automobile. The proof further showed that between January and June, 1922, there had been other exactly similar transactions between the motor company and the trust company as to other Cleveland cars; and that at the time in question the motor company had a "general stock of cars," of which some had been paid for in full, and fifteen cars were held under like trust receipts, on each of which cars amounts had been paid equivalent to twenty per cent of their respective purchase prices, besides expenses, including the expense of a "surety bond for the accounting for the car or proceeds thereof" as provided for in the trust receipt. The motor company never asked permission to sell or deliver any cars under the trust receipts, and the said trust company never gave any oral or written consent in this or in any prior case, but the motor company had sold and delivered cars as soon as customers were ready to take delivery. After such a sale and delivery the motor company would deposit the proceeds of sale in its own account and send a check the same day to the trust company for the amount due on the "time draft" given for that car. The amounts due the trust company were carried in a "loan account" on the books of the motor company. The trust company never made any objection to such sales by the motor company without prior consent, and after payment of the time draft the motor company never received from the trust company a written consent confirmatory of such sale. The "time draft" covering the automobile in suit was not paid. A manager for the trust company testified that the motor company had a "big

building " and that he had knowledge of the fact that the " Cleveland " cars held under these trust receipts were there for display purposes and that there were signs on the windows and over the doorway of the motor company that they were distributors of Cleveland sedan cars, and that the cars in the showroom were not the only cars for sale, as it was the practice to have other cars for sale in other parts of the building, and that there were " a great many other automobiles " in the building besides the car in question. Without analyzing and discussing all the numerous authorities cited by counsel on both sides, I have come to the conclusion from an examination thereof and of the conceded facts in this case that judgment must be granted to the plaintiff upon the following grounds: *First.* The " negotiable trust receipt " in the instant case does not come within the class of " trust receipts " which have been held to be valid and to give protection to the bank or trust company advancing funds to the signer thereof as against an innocent third party, although not recorded, because of business necessity and convenience. In that class of cases the signer of the " trust receipt " has been intrusted with the bill of lading and possession of the goods for some specific and limited purpose, such as to warehouse the goods in the name of the bank and return the warehouse receipt immediately, or to deliver the goods at once to a particular named customer and purchaser and to immediately return the proceeds to the bank, or to show the goods to a named customer for his approval and to immediately return the goods if not accepted by the customer, or for some other specific and limited purpose, both in scope and time, as specified in such " trust receipts," which have been sustained by the authorities. *Second.* The trust receipt in the present case gives express permission " to display " the car in question in the " place of business " of the motor company and " with liberty to " said company " to exhibit " the same, and " to sell the same " for the account of the holder of the said " time draft " after first obtaining their written consent, which time draft ran for a period of three months, during all which time the motor company could " display " and " exhibit " said car in their " place of business " as merchants and retail dealers of automobiles. No case has been called to my attention which has gone so far as to sustain as against an innocent purchaser an unrecorded " trust receipt," giving such broad powers to a signer of a trust receipt during such a long period of time, where he was a known dealer in the goods and mingled them with his own goods and advertised them for sale with the full knowledge of the bank or trust company holding the trust receipt. *Third.* The said trust company and its transferee, Collins, who stands

in no better position, are estopped from asserting any title as against the plaintiff, an innocent purchaser for value without notice, because with full knowledge they have permitted the motor company to display and advertise these cars for sale in their place of business, and the plaintiff who went to this place of business and ordered the car in question had a perfect right to rely upon the apparent right of the motor company to sell the car so purchased. In fact the construction placed upon the " trust receipt " by the " trust company " and by the motor company by their conduct in permitting the selling of cars without asking or giving any kind of consent, shows clearly that the motor company did have actual authority to sell in spite of the secret clause that written consent must first be obtained, which would be impracticable if the " time draft " should be negotiated to some unknown holder whose consent had to be first obtained.  As the motor company thus had possession of the car and the right to sell the same, the plaintiff got a title. Pers. Prop. Law, § 43.  *Fourth.* Moreover, the general tendency of legislation in this state is to protect innocent third parties from secret unrecorded liens and requires all instruments seeking to give such liens, claims or titles to be recorded.  See Pers. Prop. Law, §§ 45, 62, and Lien Law, § 230.  The rights of the public and innocent purchasers, in cases like the present, are paramount to secret liens and the supposed necessity and convenience of business which are the poor excuses made in justification of unrecorded " trust receipts," which should be strictly limited in scope and purpose to be valid.  Settle findings and judgment upon notice.

Judgment accordingly.